McCULLOUGH TOOL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 66616. Filed January 28, 1960.

*Wilson B. Copes, Esq.*, and *James E. Harrington, Esq.*, for the petitioner.

*Richard W. Janes, Esq.*, and *Cyrus Johnson, Esq.*, for the respondent.

748

OPINION.

BLACK, *Judge:* The first issue here presented is whether, as petitioner contends, sums paid in 1951 and 1952 by petitioner under the jet patent and bullet patent agreements of 1947 and 1944, respectively, as modified by the 1950 agreements, were paid to acquire depreciable capital assets of a fixed cost and, therefore, whether petitioner is entitled to deduct depreciation on the patents under section 23(1)(1) [1] of the 1939 Code; [2] or whether, as respondent has determined, the agreements as modified failed to accomplish a fixed price for the patents. Respondent has disallowed petitioner's claim for depreciation on the patents and in lieu of depreciation, has allowed petitioner a deduction in each of the taxable years of $324,000 as deductible royalties under the licensing agreements of 1944 and 1947 within the provisions of section 23(a)(1)(A). [3] It is now agreed that if petitioner is not to be allowed depreciation on the patents, it is to be allowed $408,000 as royalties paid in each of the taxable years.

Respondent does not contend that these patents are not depreciable capital assets, nor does he contend that petitioner did not purchase the patents. He insists, rather, that petitioner did not have a fixed cost basis for the patents susceptible of depreciation. Respondent has determined that the modification agreements of 1950 were of no effect for tax purposes because petitioner had already purchased the patents under the 1944 and 1947 agreements. With such an interpretation we do not agree. Whether, under our views expressed in *Edward C. Myers*, 6 T.C. 258, the licensor-vendors had effected a sale of the patents is not material to the two issues we have here to decide. What is material, we think, is that the modification agree-

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
In computing net income there shall be allowed as deductions:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(1) DEPRECIATION.—A reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—
(1) of property used in the trade or business \* \* \*
[2] All section references are to the Internal Revenue Code of 1939, as amended.
[3] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
In computing net income there shall be allowed as deductions:
(a) EXPENSES.—
(1) TRADE OR BUSINESS EXPENSES.—
(A) In General.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business \* \* \*

ments of 1950 substituted for petitioner's then-existing obligation to make payments of royalties dependent upon gross receipts over the lives of the patents, new obligations to make payments of sums certain over specified shorter periods of time. Such substitution of obligations differing materially in extent and time are mutually supporting considerations giving rise to valid and enforcible contracts. See 6 Williston, Contracts, sec. 1826 (rev. ed.), and cases collected in note 2 thereto. The payments made under the modification agreements are directly attributable to the purchase of the patents.

We sustain petitioner's assignment of error on this issue, and hold that the respondent erroneously disallowed deduction of depreciation based upon the cost of the patents as fixed by the modification agreements of 1950.

The second issue presented is whether the agreements of 1944 and 1947, as modified in 1950, created outstanding indebtedness includible in petitioner's borrowed capital under section 439 (b) (1).[4] Petitioner contends that the modification agreements of 1950 effected a revocation of its unilateral rights of termination under the earlier agreements, established fixed prices for the patents and fixed dates of payment, and that, therefore, the agreements created outstanding indebtedness incurred in good faith and evidenced either by notes or conditional sales contracts. Respondent, however, contends that petitioner retained its unilateral rights of termination under the modification agreements and that, therefore, petitioner had no outstanding indebtedness thereunder includible as borrowed capital in the computation of its excess profits credit. Respondent also contends that the alleged indebtedness created by the modification agreements of 1950 was not evidenced by any of the instruments named in section 439 (b) (1) of the applicable statute. Finally, respondent contends that petitioner did not enter into the modification agreements "in good faith for the purposes of the business."

From the language used in section 439 (b) (1), it is apparent that, in order for a taxpayer to include certain indebtedness in its borrowed capital for excess profits tax credit purposes, such indebtedness must be (1) an outstanding indebtedness, (2) must have been incurred in good faith for the purposes of the business, and (3) must be evidenced by one of the specified types of instruments named in

---

[4] SEC. 439. BORROWED CAPITAL.

(b) DAILY BORROWED CAPITAL.—For the purposes of this subchapter, the daily borrowed capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following:

(1) The amount of the outstanding indebtedness (not including interest) of the taxpayer, incurred in good faith for the purposes of the business, which is evidenced by a bond, note, bill of exchange, debenture, certificate of indebtedness, mortgage, deed of trust, bank loan agreement, or conditional sales contract. * * *

the statute. Satisfaction of requirements (1) and (2) named above is insufficient to bring an item of indebtedness within borrowed capital unless the further requirement is met, that the indebtedness is properly evidenced. This evidence must be in writing and of a specific kind, limited to the types of instruments enumerated in the statutory definition of daily borrowed capital.

We shall, therefore, first discuss whether the indebtedness created by the modification agreements was evidenced by one of the specific types of instruments specified in the applicable statute. If it was not so evidenced, it cannot be included in petitioner's borrowed capital for excess profits tax purposes. Although the modification agreements were in writing, it seems clear that the indebtedness created thereby was not evidenced by a bond, bill of exchange, debenture, certificate of indebtedness, mortgage, deed of trust, or bank loan agreement. Petitioner does not contend that the indebtedness was evidenced by any of the types of instruments just named. However, petitioner does contend that the contracts entered into by the parties in the modification agreements were notes within the meaning of that term as used in the statute. Petitioner also contends that the transfer of the patents made to petitioner by the modification agreements for the considerations therein named represented conditional sales within the meaning of that term as used in the statute. We do not think that either of these contentions can be sustained.

We shall first discuss whether or not the modification agreements which created the indebtedness were notes within the meaning of the statute. The respondent, in his regulations interpreting section 719 of the so-called World War II Excess Profits Tax Law, which is substantially the equivalent of section 439 of the present statute, interprets the word "note" as "promissory note." Sec. 35.719–1, Regs. 112. Respondent makes no interpretation in his regulations issued under the present statute. Sec. 40.439–1, Regs. 130. We think, however, that the word "note" as used in each of the statutory provisions means the same.

In *Journal Publishing Co.*, 3 T.C. 518, the taxpayer publishing company entered into a written contract agreeing to pay a competitor over a period of years, including the taxable year, the sum of $520,000, of which $50,000 was for certain assets and $470,000 was for the competitor's promise, within certain limits, to discontinue publication and not to resume publication of newspapers or otherwise compete. During the taxable year the daily average outstanding liability of the taxpayer to such competitor, as found by us, was $483,770.49. Based on the foregoing facts, we held that the liability of the taxpayer under the contract was not borrowed capital within the meaning of section 719, because the taxpayer's liability under

the contract was not evidenced by a bond, note, bill of exchange, debenture, certificate of indebtedness, mortgage, or deed of trust and, therefore, might not be considered in the computation of invested capital. In the *Journal Publishing Co.* case, in holding against the taxpayer, among other things, we said:

If the contract in the instant case were to be construed as a promissory note, its fair market value would be includible in the gross income of the News Co. in the year in which the contract was made. However, this Court has held that "when evidence was introduced showing that the deferred payments were evidenced only by contract, where no notes, bonds, or other evidences of indebtedness other than the contract were given, such contract had no fair market value, and that the amounts of the deferred payments should be included in income when received." *C. W. Titus, Inc.*, 33 B.T.A. 928, 935. The authorities cited by petitioner do not go beyond confirming the essential correctness of the definitions of a promissory note as stated above. We are of the opinion that the contract in the instant case is not a "note" within the meaning of section 719(a)(1) of the Internal Revenue Code, as amended by the Second Revenue Act of 1940.

While, of course, it is true that the contract in the *Journal Publishing Co.* case was different from the contract evidenced by the modification agreements, nevertheless we think that just as we held in that case that the contract therein involved was not a note within the meaning of the applicable statute, we must also hold here that petitioner's promises to pay under the contracts created by the modification agreements were not evidenced by a promissory note. We hold against petitioner on this contention.

Petitioner's next contention is that the modification agreements were conditional sales and, therefore, on that account the amounts in question are includible in petitioner's borrowed capital for excess profits tax credit purposes. We think the modification agreements do not evidence conditional sales. Section 40.439–1(f), Regulations 130, defines the term "conditional sales contract" as follows: "The term 'conditional sales contract' means a contract corresponding to a mortgage except that the transfer of title is made dependent upon the payment of the stipulated price." That the modification agreements here are not conditional sales contracts seems clear to us. No transfers of titles or other substantial rights were made "dependent upon the payment of the stipulated price."

In reading paragraph 1 of the modification agreements which modified paragraph 6 of the original licensing agreements, paragraph 6 was changed in certain important respects and, among the changes, the following clause was included in it:

The parties are agreed that the total of these payments, $1,460,000.00, shall be the full remaining price to be paid by the [petitioner] for the *complete* and *absolute* ownership of the patents and patent applications described in Exhibit "A". [Emphasis supplied.]

A similar provision except as to amount was contained in the modification agreement as to the jet patents. We do not regard the modification agreements as effecting conditional sales. We think they effected completed sales. No title was reserved by the transferors so far as we can see and petitioner did not impose any conditions as to payments, except to specify the time when they should be made. We do not sustain petitioner on this point.

For reasons above stated, we sustain respondent's determination that petitioner is not entitled to use the indebtedness created by the modification agreements of 1950 as borrowed capital under section 439.

*Decision will be entered under Rule 50.*